UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALDINE GRECO, : | |
| : | CIVIL ACTION NO. |
| Plaintiff, : | |
| : | JURY DEMAND |
| v. : | |
| : | |
| MERCK & CO., INC. : | |
| : | |
| Defendant. : | |

# COMPLAINT

## PARTIES

1. Plaintiff, Geraldine Greco is an adult individual and citizen of the United States, and a resident of the state of Pennsylvania, having at all times relevant and material, an address presently at 2112 Yorktown North, Norristown, PA 19403.

2. Defendant, Merck & Co., Inc. ("Merck"), upon information and belief, is a corporation or other form of business organization, having at all times relevant and material a principal place of business at 354 North Sumneytown Pike, North Wales, PA 19454.

3. At all times relevant and material, defendant acted by and through its officers, agents, servants and/or employees, who at all times relevant and material acted within the scope of his/their authority and within the course of defendant's business, mission and affairs.

## JURISDICTION AND VENUE

4. This district court has jurisdiction over this action against the defendant pursuant to 28 U.S.C. §1331, in that the cause of action arises under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 et seq., as amended, and related federal regulations.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), in that defendant resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district and no real property is involved.

## FACTUAL BACKGROUND

6.     Merck is a global company engaged in the business of research, development, manufacture, distribution, marketing and promotion, and sale of health and pharmaceutical products.

7.     Plaintiff (d/o/b 12/22/48) began her employment with Merck on December 20, 1999, working as an administrative assistant [level] 14 at the company's corporate office.

8.     In 2006, plaintiff was promoted to Administrative Assistant 18, receiving increased responsibilities and rate of pay.

9.     Plaintiff also had earned her bachelor of science degree in business administration at Gwynedd Mercy College in 2006, while employed at Merck, to advance her career.

10.    Plaintiff went out on approved family medical leave (FML) on December 30, 2010 for three surgeries, and returned to her position on or about April 4, 2011.

11.    Plaintiff consistently had good to excellent performance reviews, no disciplinary actions, and perfect attendance record while at Merck.

12.    On May 31, 2011, plaintiff was called into a meeting with Merck supervisors and a union manager, and was accused of not reporting two wage overpayments during her FMLA leave in 2010, and taking 24 "incidents" of sick time in 2010.

13.    The incidents were actually one-hour periods plaintiff took off to see her doctors or if she was briefly sick, which plaintiff coded as "sick time" and reported on her time cards. Merck, after the fact, tagged her one-hour periods as full 24 sick "[24 hour] days".

14. Nothing in Merck's policies described the term "sick incident" or that a sick "incident" meant a full sick day, yet Merck for periods leading up to plaintiff's FMLA leave went trolling in plaintiff's prior year's work history to invent leave violations.

15. Plaintiff, in 2010 and 2011 with regularity, called human resources to inquire as to her accrued and available sick time, as she took medical leave and intermittent hours off for necessary doctors visits and/or sick time leading up to her surgeries.

16. Throughout 2010 and 2011, plaintiff coded her hours off to see doctors, or if she was sick, as "sick time" as instructed by human resources.

17. Human resources never told plaintiff her job was in jeopardy based on her leave usage, or that plaintiff was approaching and/or had exceed allowable leave time, and actually sent documents to plaintiff reflecting her leave status.

18. At the May 31, 2011 meeting, Merck immediately suspended plaintiff without pay indefinitely, pending "investigation".

19. The suspension was unwarranted, particularly since Merck had no applicable sick policy to apply to plaintiff's situation, and plaintiff had agreed to payroll setoffs to pay back the overpayments that Merck admitted were its own mistakes.

20. On June 3, 2011, plaintiff received a letter from Merck telling plaintiff her sick leave usage violated company policy.

21. The letter was confusing, and a sham, as Merck had no policy to address plaintiff's honesty in coding her hourly sick time to see her doctors, as "sick" time, and human resources had advised plaintiff concerning her use of sick time.

22. The same day, plaintiff also received two letters (by Federal Express and U.S. Mail) terminating her employment effective June 8, 2011.

23.     Throughout the entire aforementioned period, plaintiff received no written or verbal warning or notice from Merck, or her superiors, that she had violated any company policy, or that such action or conduct regarding sick time would jeopardize her position or lead to termination.  Merck had specifically advised plaintiff to the contrary.

24.     Plaintiff filed a union grievance, which the company heard as a third-level grievance.  Merck forced immediate retirement upon plaintiff instead of termination, telling her "you're better off retiring", but never issued paperwork to plaintiff to retire her.

25.     Before plaintiff could consider retirement, and even before her supervisor (Robert Bachman) could initiate the repayment process, Merck re-issued the same letter terminating plaintiff's employment effective June 8, 2011.

26.     Plaintiff was targeted for termination beginning July, 2010.  At that time, prospective retirement-age employees, particularly men and women over 55, were invited to an informational retirement session given by Merck's union president.

27.     Plaintiff attended the meeting but declined the "offer" to retire, expressing a strong desire to continue her career with Merck where she had enjoyed much success and accouterments of prestige in longevity.  Merck's scrutiny of her time records began at this point.

28.     Upon information and belief, Merck terminated two woman (Lisa Force; Karen Krier) younger than plaintiff (but over 40) for putatively violating absenteeism policies, but they were given "last chance agreements" and reinstated in their positions at Merck and remain employed.

29.     Within several short weeks of plaintiff's termination from Merck, a woman named Christine Sine (who was scheduled to be laid off), an estimated age 35, took over plaintiff's position as administrative assistant reporting directly to Robert Bachman, occupying

4

plaintiff's former cubicle in Bachman's department.

30.Plaintiff's right to file this civil action is based on a notice of right to sue letter dated September 27, 2012 by the U.S. Equal Opportunity Commission, Philadelphia District Office, received by plaintiff through the U.S. Mail, and her rights have accrued.

31.Plaintiff has complied with all conditions precedent to the filing of this civil action.

## COUNT I

Age Discrimination in Employment Act of 1967
[Age Discrimination]
v.
Defendant, Merck & Co., Inc.

32.Plaintiff incorporates herein by reference paragraphs 1 through 31, inclusive, as though the same were more fully set forth at length.

33.Plaintiff was over forty (40) years old at the time she was treated differently than other women Merck alleged violated an alleged "sick leave policy", and at the time she was replaced by Christine Sine.

34.Plaintiff was over forty (40) years old at the time she was terminated from her employment.

35.Plaintiff was accorded different treatment, including termination, from younger employees similarly situated as plaintiff who were allowed to remain employed at Merck and/or hired by Merck to perform plaintiff's job duties in the same position.

36.Plaintiff's termination was based on Merck's intentions to re-staff plaintiff's position with a younger employee and rid the company of an over-60 year old employee, and plaintiff's age was a substantially motivating factor.

37. The company acted with an illegal discriminatory motive towards plaintiff.

38. As a result of her termination, plaintiff, Geraldine Greco, has suffered direct and indirect harm and damages.

39. The company, acting as aforesaid, discriminated against the plaintiff under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. (the "ADEA") and has wilfully violated the ADEA.

40. The company, acting as aforesaid, engaged in such illegal discriminatory practices with malice or with reckless indifference to the federally protected rights of plaintiff.

WHEREFORE, plaintiff, Geraldine Greco demands judgment in her favor and against defendant, Merck & Co., Inc. for monetary damages including retroactive back pay, front pay, pre-judgment interest, liquidated damages, injunctive relief and/or affirmative relief as determined by the Court necessary to effectuate the purposes of the ADEA including re-instatement to employment, attorneys' fees and costs, all under the ADEA, as amended, and all applicable federal regulations promulgated thereunder, and for such other relief as the court deems just.

>  */s/ J. Stephen Woodside*
>  J. Stephen Woodside
>  Attorney for plaintiff, Geraldine Greco

OF COUNSEL:

J. STEPHEN WOODSIDE, P.C.
One Montgomery Plaza, Suite 605
425 Swede Street
Norristown, PA 19401
610-278-2442
610-278-2644

Dated:   December 24, 2012

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

></br>
*/s/ J. Stephen Woodside*_____
J. Stephen Woodside
Attorney for plaintiff, Geraldine Greco

Dated:  December 24, 2012